DECISION.
{¶ 1} Delrico Robertson appeals his convictions for murder with a gun specification, felonious assault with a gun specification, and having a weapon while under a disability. His assignments of error do not have merit, so we affirm the judgment of the trial court.
 Three Shootings {¶ 2} This case is about three shootings that occurred between March 7, 2006, and April 5, 2006. During the jury trial, the state alleged that, on March 7, two girls were fighting on the corner of 15th and Republic Streets in Cincinnati. According to Lawrence Maupin, Michael Willis attempted to break up the fight. Maupin testified that he had heard Robertson say, "Don't break it up." Willis ignored Robertson, and Robertson shot Willis three or four times in the back. Jamisha Willis, Michael's sister, testified that she arrived at the scene after her brother had been shot, and that she saw bullet wounds to his buttocks and thigh.
 {¶ 3} Two and a half weeks later, on March 25, Andre Hayes was operating a bootleg cab in Cincinnati. The state alleged that Hayes had picked up Robertson and had taken him to get pizza. Two days later, Hayes again picked up Robertson. Robertson asked Hayes to take him to an apartment complex. While on the way to the apartment complex, Robertson told Hayes to stop in the Over-the-Rhine area of Cincinnati. After Robertson had exited from the van, he shot Hayes in the groin.
 {¶ 4} Nine days after Hayes was shot, Matthew Cox and three teenage girls drove from Northern Kentucky to Race Street in Cincinnati to purchase heroin. One of the girls, Christina Julian, had arranged the sale with Amond Raney. While Raney was selling Julian heroin on the passenger side of Cox's car, Robertson ran up to the *Page 3 
driver's side. The state alleged that Robertson had shot Cox in the head, and that Cox had died almost instantly.
 The Investigation {¶ 5} Detective Robin Upchurch investigated the Willis shooting. According to Detective Upchurch, she spoke with Willis, and he eventually identified the person who had shot him. While that investigation was progressing, Officer Scott Johnson was investigating the Hayes shooting. According to Officer Johnson, in addition to providing a description of the man who had shot him, Hayes stated that the shooter had a stutter, and that the shooter went by the nickname Detroit. Detective Upchurch testified that she had learned that she and Officer Johnson were both looking for a person nicknamed Detroit. Officer Johnson was able to match the nickname with Robertson. When Officer Johnson showed Hayes a lineup that included Robertson's photograph, Hayes identified Robertson as the man who had shot him. Detective Craig Ball testified that fingerprints were lifted from Hayes's van. Three of the fingerprints were identified as belonging to Robertson.
 {¶ 6} While Detective Upchurch and Officer Johnson were investigating the Willis and Hayes shootings, Cox was shot. Detective Kurt Ballman testified that witnesses had identified a person nicknamed Detroit as having shot Cox. Tange Wilson witnessed the shooting and told police officers that Detroit was Robertson. Later, Raney, who had been selling heroin to Cox's companions at the time of the shooting, told police officers that Robertson had shot Cox. At trial, however, Raney changed his statement and testified that he could not identify the shooter. Lawrence Maupin testified that he had witnessed both the Willis shooting and the Cox shooting, and he identified Robertson as the shooter in both incidents. *Page 4 
 {¶ 7} After Robertson had been connected to Cox's murder, police officers searched for him in the Cincinnati area. They were unable to locate him. About two weeks after Cox was shot, Robertson was arrested in Detroit, Michigan.
 The Trial {¶ 8} Robertson was indicted for four counts of felonious assault with a gun specification, three counts of having a weapon while under a disability, and one count of murder with a gun specification. The trial court denied Robertson's motion for relief from joinder, and all the offenses were tried before the same jury. Robertson was found guilty of four counts of felonious assault with a gun specification, three counts of having a weapon while under a disability, and one count of murder. The trial court imposed an aggregate sentence of 50 years to life in prison.
 Joinder {¶ 9} For ease of discussion, we consider the assignments of error in the order that the issues arose. Robertson's fifth assignment of error is that the trial court erred when it denied his request for relief from joinder.
 {¶ 10} Under Crim.R. 8(A), the joinder of offenses is proper if the offenses "[were] of the same or similar character, or [were] based on the same act or transaction, or [were] based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or [were] part of a course of criminal conduct." A defendant can move for relief from joinder under Crim.R. 14. The burden is on the defendant to show that he would be prejudiced by joinder.[1] And the trial court's decision is subject to an abuse-of-discretion review.[2] *Page 5 
 {¶ 11} Here, Robertson moved for relief from joinder prior to trial. After a hearing, the trial court denied the motion. Robertson did not renew his objection at the close of the presentation of the state's evidence or at the close of trial. His failure to renew the motion waived any previous objection, so the issue was not preserved for appeal.[3]
 {¶ 12} Even if Robertson had preserved the issue, we conclude that the trial court did not abuse its discretion when it denied the motion to sever. The state argued that the offenses were part of a course of criminal conduct, as demonstrated by the time period during which each of the offenses had taken place (March 27 to April 6), the way the crimes had occurred (gunshots to the lower extremities in two cases, in the middle of the day), the area where the offenses had occurred, and the randomness of the crimes. We are not persuaded that concededly random shootings can be part of a course of conduct. But joinder was still permissible if the evidence of each offense was uncomplicated.[4] That was the case here. The evidence of each offense was discrete. The court did not abuse its discretion when it overruled the motion for relief from joinder. The fifth assignment of error is not well taken.
 Other-Acts Evidence {¶ 13} In an assignment of error related to his challenge to joinder, Robertson asserts in the third assignment that the trial court erred when it allowed the admission of Robertson's other crimes, wrongs, or acts. The evidence about which Robertson complains was evidence that was probative of the offenses for which he was on trial. It was not impermissible other-acts evidence under Evid.R. 404(B). And the trial court *Page 6 
clearly instructed the jury that the offenses were to be considered separately. We conclude that the trial court did not improperly allow other-acts evidence.
 Crawford Violations {¶ 14} In his second assignment of error, Robertson asserts that the trial court erred when it allowed hearsay testimony that violated his Sixth Amendment right to confront his accuser. Admission of a declarant's prior testimonial statements are barred by the Confrontation Clause of the Sixth Amendment unless the declarant is unavailable to testify at trial and the defendant has had the opportunity to cross-examine the declarant.[5]
 {¶ l5} Michael Willis did not testify at trial, but his sister, Jamisha, did. Robertson contends that Michael's statements were admitted through the testimony of Jamisha and Detective Upchurch, and that Robertson did not have any opportunity to cross-examine Michael. Jamisha testified that her brother had told her that Robertson had shot him. The state concedes that Jamisha's testimony was violative ofCrawford. But defense counsel's single objection to the testimony was sustained by the trial court. Not only did defense counsel not object to any other statements made by Jamisha, but during cross-examination, counsel elicited further testimony from Jamisha that reiterated that her brother had identified Robertson. The absence of any objection on the record amounted to a waiver of all but plain error. Under the plain-error standard, Robertson can not prevail on his claim "unless, but for the error, the outcome * * * would have been otherwise."[6]
Given the eyewitness account and identification by Maupin, we are unable to conclude that the result of the trial would have been otherwise even if Jamisha's statements had not been allowed. *Page 7 
 {¶ 16} Detective Upchurch was also permitted to state, over the objection of counsel, that Willis had provided a description of his shooter. Although framed in terms of a description, and not a statement, the description was still testimonial in nature.[7] The trial court erred when it overruled Robertson's objection to the statement. But we conclude that this error was harmless in light of Maupin's eyewitness account.
 {¶ 17} Robertson also argues that Detective John Horn's testimony about Robertson cellular-phone records and Detective Upchurch's testimony that Officer Johnson had told her that Hayes had identified Robertson also violated his confrontation rights. But because those statements were about the course of the investigations and were not testimonial in nature, they were not subject to Crawford.[8]
 Opinion Testimony of Police Officer {¶ 18} Robertson's fourth assignment of error is that the trial court erred when it permitted the state to present opinion testimony by a police officer. Robertson points to Detective Upchurch's testimony in which she stated that she had decided that Michael and Jamisha Willis were being truthful during the investigation.
 {¶ 19} The credibility of witnesses is left to the determination of the jury.[9] Lay witnesses are not permitted to supplant the jury's role by opining on the truthfulness of witnesses. But we conclude that there was no improper opinion here. Rather than attempting to impinge upon the province of the jury, Detective *Page 8 
Upchurch's comments about the truthfulness of the Willises related to the conduct of her investigation.[10] Because she believed the Willises, she did not focus on another potential defendant.
 {¶ 20} Even if the opinion were improperly given, any error would have amounted to invited error, because Detective Upchurch's opinion was elicited by Robertson's counsel during cross-examination. The prosecutor did ask follow-up questions during redirect, but Robertson's counsel had opened the door to the questions. And since Robertson's counsel did not object to the prosecutor's follow-up questions, we would reverse only if we found plain error. We conclude that there was no error here. The fourth assignment of error is overruled.
 Prosecutorial Misconduct {¶ 21} In his first assignment of error, Robertson asserts that he was denied his due-process rights because the prosecutors engaged in conduct that deprived him of a fair trial. Robertson lists several instances in which he claims that the prosecutors acted improperly. We must review the prosecutors' actions to determine "whether [they] were improper and, if so, whether they prejudicially affected substantial rights of the defendant."[11] Key to our consideration is not the culpability of the prosecutors but the fairness of the trial.[12]
 {¶ 22} Robertson claims that the prosecutors deliberately violated his confrontation rights when they elicited inadmissible hearsay testimony about the Willis shooting. As we have discussed, both Jamisha and Detective Upchurch gave testimony that violated Crawford. But we are unable to conclude that the *Page 9 
prosecutor's conduct with regard to the statements was improper. Contrary to Robertson's assertion, neither witness was called to deliberately flout Robertson's confrontation rights. Jamisha's testimony was relevant for its discussion of Michael Willis's injuries, and Detective Upchurch's testimony was primarily about the conduct of the investigation that led to identifying Robertson as a suspect. We are unable to say that the witnesses' testimony made the trial unfair.
 {¶ 23} Robertson contends that the assistant prosecutor made improper remarks during closing arguments. Defense counsel objected to none of the remarks, so we are limited to a plain-error review. During closing argument, one of the assistant prosecutors argued that the jury could use the evidence in Hayes's shooting to prove that Robertson had committed the other two shootings, and that the jury should consider the horror felt by Hayes and Cox. And according to Robertson, the prosecutor improperly insinuated that Robertson had threatened Willis and Raney.
 {¶ 24} As we discussed with respect to the issue of joinder, we are not persuaded by the state's argument that the three shootings were part of a course of conduct by Robertson. So it was improper for the prosecutor to suggest that the jury could consider the evidence of one offense as evidence of a separate offense. And the remarks about the horror felt by the victims and the possibility of witness intimidation were not based on evidence that had been introduced at trial, so the remarks were improper. But even though the remarks were improper, we cannot say that the trial court's failure to strike the remarks amounted to plain error. The outcome of the trial would not have been different in the absence of the remarks.
 {¶ 25} Robertson also asserts that the prosecutor's conduct was improper because Detective Upchurch gave improper opinion testimony about the truthfulness *Page 10 
of Jamisha and Michael Willis. But as we discussed earlier, this testimony was elicited during cross-examination. The prosecutor's follow-up questions, after the issue had been raised by the defense, were not improper.
 {¶ 26} Robertson argues that the prosecutor also acted improperly when he impermissibly excluded Robertson's family members and friends from the courtroom. While making an oral motion for a new trial after the jury's verdict had been announced, defense counsel stated to the court that one of the prosecutors had asked Robertson's family members and friends to leave the courtroom. The prosecutor told the trial court that he had approached the two men in question and asked if they needed help. When he asked them what their names were, they left. According to the prosecutor, he did not ask the men to leave. Robertson told the court that the two men were later told by another person in the courtroom that they were permitted to stay in the courtroom. The trial court determined that the prosecutor had not attempted to exclude the men from the courtroom. And based on the record, we cannot conclude otherwise.
 {¶ 27} The record does not support Robertson's contention that he was deprived of a fair trial. The first assignment of error is overruled.
 Credibility Testimony {¶ 28} In the sixth assignment of error, Robertson claims that the trial court erred when it refused to allow his counsel to impeach the credibility of Maupin. Robertson called Michael Gray to testify. Gray had been housed with Maupin in the Hamilton County Justice Center. During direct examination, defense counsel asked Gray, "And based on his conversations to you, were you able to determine whether or *Page 11 
not you felt [Maupin] was a credible individual to the extent that he would tell the truth?" The trial court sustained the prosecutor's objection to the testimony.
 {¶ 29} The state now argues that Robertson did not preserve the record for our review of the trial court's decision, because he did not proffer what Gray's answer would have been if he had been permitted to testify. "While the better practice, in every instance, may be to proffer excluded evidence, under Evid. R. 103[,] a party is not required to proffer excluded evidence in order to preserve any alleged error for review if the substance of the excluded evidence is apparent to the court from the context within which questions were asked."[13] Here, it is clear from the transcript that the excluded evidence would have been that Maupin was untruthful. We have a sufficient record upon which to base our decision.
 {¶ 30} Under Evid.R. 608(A), "[t]he credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation" subject to certain limitations. The trial court incorrectly stated that the testimony had to be about Maupin's reputation for truthfulness, not about Gray's opinion of Maupin's truthfulness. Evid.R. 608(A) is clear that the evidence may be in the form of opinion. The evidence should have been allowed.
 {¶ 31} Even though we conclude that the trial court improperly excluded Gray's opinion of Maupin's truthfulness, we conclude that the error was harmless.[14] Gray was permitted to testify that Maupin had told Gray that he was going to lie during Robertson's trial in the hopes of reducing his sentence. That testimony served the same purpose as the opinion testimony. And the value of the testimony that Maupin's intention was to lie at trial would have probably been diminished had *Page 12 
Gray testified that Maupin was often untruthful. The sixth assignment of error is overruled.
 Instruction on Flight {¶ 32} Robertson asserts in his 13th assignment of error that the trial court erred when it instructed the jury on flight as consciousness of guilt. "Evidence of flight is admissible to show consciousness of guilt."[15] If the record contained sufficient evidence to support a finding of flight, it was proper to give the jury an instruction on it.[16] We will not reverse the trial court's decision to instruct on flight unless there was an abuse of discretion.[17]
 {¶ 33} Here, the state presented evidence that Robertson had remained in Cincinnati after shooting Willis and Hayes, but that he had disappeared after Cox was shot. Robertson was later arrested in Detroit. Robertson argued that his presence in Detroit, where his family lived, was not sufficient to show flight. But we conclude that there was sufficient evidence to create a question for the jury to consider. The trial court did not abuse its discretion when it instructed the jury on flight. The 13th assignment of error is not well taken.
 Sufficiency and Weight of the Evidence {¶ 34} Because they are related, we consider Robertson's 10th, 11th, and 12th assignments of error together. In the twelfth, Robertson asserts that the trial court erred when it overruled his Crim.R. 29 motion for an acquittal. In the 10th assignment of error, he asserts that his convictions were based on insufficient *Page 13 
evidence. And the 11th assignment of error is that the convictions were against the manifest weight of the evidence.
 {¶ 35} The standard of review for a sufficiency claim and for the denial of a Crim.R. 29 motion for an acquittal is the same. When an appellant challenges the sufficiency of the evidence, we must determine whether the state presented adequate evidence on each element of the offense.[18] On the other hand, when reviewing whether a judgment is against the manifest weight of the evidence, we must determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.[19]
 {¶ 36} After reviewing the record, we conclude that the state presented sufficient evidence of all the offenses. Robertson challenges whether the state proved that he had acted with purpose when he shot Cox. Raney testified that it appeared that Robertson's gun went off accidentally. But other witnesses, including Tange Wilson, Amond Raney, and Lawrence Maupin, testified that Robertson had run up to Cox's car and had shot him purposely. The jury was in the best position to weigh this evidence. The jury was also in the best position to weigh the credibility of the witnesses. Robertson asserts that Maupin was not a credible witness, and that, absent his testimony, the state could not have proved that Robertson had shot Willis. But after reviewing all the evidence, we are unable to say that the jury lost its way when it found Robertson guilty of all the offenses. The 10th, 11th, and 12th assignments of error are overruled. *Page 14 
 Motion for a New Trial {¶ 37} Robertson asserts in his ninth assignment of error that the trial court erred when it denied his motion for a new trial. After the jury had found Robertson guilty, but before the court imposed sentence, Robertson's counsel made an oral motion for a new trial. The grounds for the new trial were that his family and friends had been excluded from the courtroom and that the state's case against Robertson with respect to the Willis shooting was based purely on hearsay. After a hearing, the trial court denied the motion. As we have already concluded, the record does not establish that Robertson's family and friends were excluded from the courtroom. And even if the improper hearsay testimony had not been admitted, the state presented other sufficient evidence that Robertson had shot Willis. Maupin testified that he had witnessed the shooting, and Officer Doug Snider and Jamisha Willis testified about the extent of Willis's injuries. The trial court did not abuse its discretion when it denied the motion for a new trial. The ninth assignment of error is not well taken.
 Sentencing Issues {¶ 38} Robertson's seventh assignment of error is that the trial court erred when it sentenced him to post-release control for the murder conviction. Robertson is correct that the offense of murder is not subject to post-release control.[20] But the trial court did not impose post-release control here. Instead, during the sentencing, the court made it clear that Robertson would be placed on parole for the murder conviction and would be subject to post-release control for the other offenses. The court's entry reflected that Robertson was subject to five years of post-release *Page 15 
control, which was appropriate for the felonious-assault offenses. The seventh assignment of error is not well taken.
 {¶ 39} Robertson also challenges the trial court's sentence in the 15th assignment of error. He asserts that the trial court improperly imposed consecutive sentences without findings of facts made by a jury. But the trial court was not required to make findings before imposing the consecutive sentences.[21] Robertson also asserts that the trial court improperly entered convictions for allied offenses of similar import. Based on this court's recent decision in State v.Smith,[22] we conclude that the trial court erred when it sentenced Robertson for two felonious-assault counts for Hayes and for two felonious-assault counts for Willis. Because the offenses were allied offenses of similar import, Robertson should have been sentenced for only one felonious-assault count for each victim. We accordingly vacate the sentences imposed for the four felonious-assault offenses and remand this case for resentencing so that Robertson is sentenced for only one felonious assault for each victim.
 Ineffective Assistance of Counsel {¶ 40} In his eighth assignment of error, Robertson asserts that he was deprived of the effective assistance of counsel. To prevail on this assignment of error, Robertson must demonstrate that his counsel's performance was deficient and that, absent his counsel's errors, the result of the trial would have been different.[23] Our review of counsel's performance must be "highly deferential."[24] *Page 16 
 {¶ 41} Robertson argues that his counsel was ineffective because he did not renew his motion for relief from joinder, did not move for a mistrial after Jamisha Willis had testified, and did not seek to have Detective Upchurch's opinion testimony stricken.
 {¶ 42} We are unable to say that the result of the trial would have been different had the motion for relief from joinder been renewed. The evidence of each offense was discrete, and the trial court did not abuse its discretion when it denied the motion initially.
 {¶ 43} And it is unlikely that a motion for a mistrial would have been granted after Jamisha's testimony. Although part of her testimony was violative of Crawford, the rest of the testimony was relevant for purposes of describing the injuries that were suffered by Michael Willis. Similarly, a motion to strike Detective Upchurch's opinion testimony would likely not have been successful, as defense counsel raised the issue. Although the wisdom of questioning the detective about two witnesses' truthfulness may seem debatable in hindsight, we will not second-guess counsel's attempt to challenge the detective's decision to focus on Robertson as a suspect. We conclude that even if defense counsel had taken the actions now suggested by Robertson, the result of the trial would not have been different. The state presented overwhelming evidence of Robertson's guilt for each offense. The eighth assignment of error is overruled.
 Cumulative Errors {¶ 44} Robertson's 14th assignment of error is that the cumulative effect of multiple errors during his trial deprived him of a fair trial. Although we have concluded that there were errors that either were harmless or did not rise to the level *Page 17 
of plain error, we conclude that, even when considered in the aggregate, the errors did not deprive Robertson of his right to a fair trial. The 14th assignment of error is overruled.
 {¶ 45} We, therefore, reverse the judgment of the trial court with respect to the sentences for the felonious-assault counts. Those sentences are vacated, and the case is remanded so that the court can sentence Robertson for only one felonious-assault offense for each victim. In all other respects, we affirm the judgment of the trial court.
Judgment affirmed in part and reversed in part, and cause remanded.
PAINTER, P.J., concurs separately.
DINKELACKER, J., concurs in judgment only.
[1] Crim.R. 14.
[2] State v. Glover, 8th Dist. No. 84413, 2005-Ohio-1984, ¶ 25.
[3] Id. at ¶ 26.
[4] State v. Hamblin (1988), 37 Ohio St.3d 153, 524 N.E.2d 476;State v. Roberts (1980), 62 Ohio St.2d 270, 405 N.E.2d 247.
[5] Crawford v. Washington (2004), 541 U.S. 36, 68,124 S.Ct. 1354.
[6] State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus.
[7] United States v. Cromer (C.A.6, 2004), 389 F.3d 662, 678.
[8] Crawford, supra. See, also, United States v. Martin (C.A.6, 1990),897 F.2d 1368, 1371.
[9] State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
[10] See In re Shubutidze (Mar. 8, 2001), 8th Dist. No. 77819.
[11] State v. Smith (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883.
[12] Smith v. Phillips (1982), 455 U.S. 209, 219, 102 S.Ct. 940.
[13] State v. Gilmore (1986), 28 Ohio St.3d 190, 192,503 N.E.2d 147.
[14] See State v. Brown (1992), 65 Ohio St.3d 483, 485,605 N.E.2d 46.
[15] State v. Brundage, 1st Dist. No. C-030632, 2004-Ohio-6436, ¶ 17, citing State v. Taylor, 78 Ohio St.3d 15, 27, 1997-Ohio-243,676 N.E.2d 82.
[16] Id., citing State v. Benjamin, 8th Dist. No. 80654, 2003-Ohio-281, ¶ 31.
[17] Id. at ¶ 18.
[18] See State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541.
[19] See id. at 387.
[20] State v. Baker, 1st Dist. No. C-050791, 2006-Ohio-4902, at ¶6.
[21] 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.
[22] (May 23, 2007), 1st Dist. No. C-070216.
[23] See State v. Bradley (1989), 42 Ohio St.3d 136, 142,538 N.E.2d 373; Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052.
[24] Strickland, supra, at 689.