[Cite as *State v. Robertson*, 2017-Ohio-7225.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160681 |
| | | TRIAL NO. B-0603150 |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| DELRICO ROBERTSON, | : | |
| | | |
| Defendant-Appellee. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: August 16, 2017

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings,* Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Groth & Associates* and *Tim A. Dugan*, and *Jeremy Levy,* and *Bryan Perkins*, for Defendant-Appellee.

**MILLER, Judge.**

{¶1} The state of Ohio appeals from the trial court's judgment granting Delrico Robertson's motion for a new trial based on newly discovered evidence. The trial court granted Robertson a new trial on charges stemming from the shootings of Michael Willis and Andre Hayes, and from the shooting death of Matthew Cox. These three shootings occurred on different dates, and there was no apparent connection among the victims. The "newly discovered evidence" was testimony from victim Willis, who had not testified in Robertson's trial.

{¶2} We reluctantly affirm the trial court's judgment concerning the charges arising from the Willis shooting, but reverse that part of the court's judgment granting Robertson a new trial on the charges arising out of the Hayes shooting and the Cox shooting death.

### Procedural History

{¶3} Following a jury trial in 2007, Robertson was found guilty of one count of murder for the shooting death of Cox; four counts of felonious assault in connection with the shootings of Willis and Hayes—each man was the victim in two counts; and three counts of having a weapon while under a disability. The trial court sentenced Robertson to 50 years to life. Robertson appealed. In pertinent part, we affirmed the jury's findings of guilt as to each charge, but held that the trial court had erred by admitting hearsay statements of two witnesses, Detective Robin Upchurch and Jamisha Willis. *State v. Robertson*, 1st Dist. Hamilton Nos. C-070151 and C-070159, 2008-Ohio-2562, ¶ 15, 16. ("*Robertson I*"). The detective and Jamisha each testified that Willis had identified Robertson as his assailant. We determined that the error was harmless in light of the testimony of Lawrence Maupin who claimed that he had witnessed Robertson shoot Willis. *Id.*

2

{¶4} Robertson later moved the trial court for leave to file a delayed motion for a new trial on the ground of newly discovered evidence. The trial court allowed it and, following a hearing on his motion, granted Robertson a new trial as to all counts. The state now appeals.

**The Willis Shooting**

{¶5} Willis was shot on the sidewalk on the corner of 15th and Republic Streets in Cincinnati. Maupin claimed to have seen the shooting, and the Cox murder, discussed below. According to Maupin, Willis had attempted to break up a street-fight between two "girls," and Robertson had told Willis, "Don't break it up." Maupin testified that Willis ignored Robertson, and that Robertson then shot Willis three or four times in the back. Michael Gray, who had been housed with Maupin at the Hamilton County Justice Center, testified that Maupin had admitted that he was going to lie at Robertson's trial in the hopes of reducing his sentence. Defense witness Twanda Alexander claimed that she had been with Maupin at the time of Willis's shooting, and that she and Maupin had not been at the scene of the crime. Willis did not testify at trial.

{¶6} Detective Upchurch investigated the shooting. She testified at trial that she had interviewed Willis, and that Willis had given her a description of his assailant. Detective Upchurch also stated that she had conducted a photographic lineup with Willis, and that Willis had identified Robertson. In *Robertson I*, 1st Dist. Hamilton Nos. C-070151 and C-070159, 2008-Ohio-2562, at ¶ 16, this court held that Detective Upchurch's testimony concerning Willis's description of Robertson as the shooter was inadmissible hearsay.

3

{¶7} Jamisha Willis, Willis's sister, testified at trial that her brother identified Robertson as the shooter some weeks after the shooting. In *Robertson I*, at ¶ 15, we held that Jamisha's statement was inadmissible hearsay.

### The Hayes Shooting

{¶8} Andre Hayes was a bootleg cab driver. Hayes had driven Robertson in his van twice. The first time, he drove Robertson from downtown Cincinnati to a nearby pizza parlor, went into the pizza parlor with him, waited 15 or 20 minutes for the pizza to be prepared, and then drove Robertson back downtown. Robertson had been seated in the front passenger seat during the pizza run. A few days later, Hayes picked up Robertson to take him to an apartment complex. Hayes recognized Robertson from the last time that he had given him a ride. On the way, Robertson asked Hayes to stop. Robertson then exited from Hayes's van and shot Hayes in both legs.

{¶9} Officer Scott Johnson investigated this crime. Hayes had told Officer Johnson that the man who shot him went by the nickname, "Detroit." Hayes was able to identify Robertson from a photographic lineup. Robertson was also linked to this shooting through forensic evidence; three of Robertson's fingerprints were found in Hayes's van.

{¶10} Detective Upchurch, who worked in the same office as Officer Johnson, investigated the Willis shooting at the same time that Officer Johnson investigated the Hayes shooting. Detective Upchurch testified that she told Officer Johnson that Detroit was the same person as Robertson.

### The Cox Murder

{¶11} Matthew Cox drove himself and three teenage girls to the Over-The-Rhine area of Cincinnati to purchase heroin. One of these girls, Christina Julian,

testified that, as she was buying the heroin though the passenger-side window of Cox's car, a man walked up to the driver's-side window and shot Cox in the head, killing him.

{¶12} Detective Kurt Ballman investigated this crime. Witnesses told him that a person named "Rico" or "Detroit" had shot Cox. Tange Wilson, who had witnessed the shooting, identified the shooter as Robertson. Maupin claimed to have also been at the scene of the Cox murder. At trial, three eye witnesses—Julian, Tange, and Maupin—testified that Robertson had shot Cox.

{¶13} Detective Upchurch testified at trial that the investigators of the Cox shooting had shared information with her, and had provided her with Robertson's name.

### Robertson's Motion for a New Trial

{¶14} Willis was the only witness called at Robertson's hearing on his motion for a new trial. Overall, Willis testified that he did not know who had shot him, and that he had never identified Robertson as his assailant to either Detective Upchurch or to his sister, Jamisha. He also claimed that the shooting did not occur as Maupin had described.

{¶15} More specifically, Willis testified that he did not identify Robertson in Detective Upchurch's photographic lineup. Instead, Willis claimed, the detective had asked him to sign the back of one of the photographs before he had seen it, and that she had told Willis that Robertson was the man who had shot him. Willis testified that the detective had also told him that he would not need to testify at Robertson's trial. Nevertheless, the detective did subpoena Willis to testify. However, she did not have a good address for him and he was never served. According to Willis, who

was from out of town, Detective Upchurch knew that he could be reached at his mother's address in Cincinnati, and that the detective was aware of that address.

{¶16} Willis also claimed that he could not and did not identify Robertson as his assailant to Jamisha.

{¶17} Finally, Willis testified that he had not attempted to break up a fight at 15th and Republic Streets and that Robertson had not asked him to stop breaking up the fight. Willis claimed that his back was to the shooter and that he had never seen who had shot him.

{¶18} We find Willis's testimony to be somewhat incredulous, especially his description of Detective Upchurch's investigative techniques and his statements that his sister had lied. However, we are mindful that credibility determinations are primarily for the trier of fact. *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. We therefore reluctantly defer to the trial court's surprising determination that Willis was telling the truth.

### Argument and Analysis

{¶19} The decision to grant or deny a motion for a new trial is discretionary. *State v. Williams*, 43 Ohio St.2d 88, 330 N.E.2d 891 (1975), paragraph two of the syllabus. We review the trial court's judgment for an abuse of discretion. An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶20} A motion for a new trial on the ground of newly discovered evidence may be granted where "the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence,

6

and (6) does not merely impeach or contradict the former evidence." *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus.

### The New Evidence and the Willis Shooting

{¶21} In its first assignment of error, the state contends that the trial court erred by ordering a new trial on the charges arising from the Willis shooting. In particular, the state takes issue with the first and sixth prongs of the *Petro* test. It first argues that the trial court abused its discretion by finding that the newly discovered evidence did more than "merely impeach or contradict" the former evidence.

{¶22} Impeachment evidence is "evidence used to undermine a witness's credibility." *Black's Law Dictionary* 597 (8th Ed.2004); *see generally* Evid.R. 607-609. Willis's testimony concerning whether he had identified Robertson as his assailant to Detective Upchurch and Jamisha, and his testimony concerning the detective's investigative techniques went to each witnesses' credibility and was therefore impeachment evidence. However, because we held in *Robertson I* that Detective Upchurch's and Jamisha's identification testimony should have been excluded from evidence, we focus our analysis on whether Willis's testimony did more than impeach or contradict other evidence offered by the state at trial.

{¶23} Here, Willis presented a version of events surrounding his shooting different from that offered by the state at trial. Willis claimed that he was not involved in breaking up a fight at 15th and Republic Streets, and that Robertson did not ask him to stop attempting to break up the fight. A victim's testimony that an incarcerated informant's version of events was untrue, where the informant's testimony was the only admissible identification of the defendant as the perpetrator, rises above "mere" contradiction. It calls into question how the jury would have

7

viewed the competing version of events offered by the victim and whether the informant was present at the shooting.

{¶24} We hold that it was not unreasonable, arbitrary, or unconscionable for the trial court to conclude that this evidence was more than merely impeaching or contradictory to the evidence presented at trial. *See Williams* 43 Ohio St.2d 88, 330 N.E.2d 891, at paragraph two of the syllabus. Consequently, the trial court did not err in holding that the sixth prong of *Petro* had been met.

{¶25} The state next contends that Robertson failed to establish the first prong of *Petro*, that the newly discovered evidence "discloses a strong probability that it will change the result if a new trial is granted." *See Petro*, 148 Ohio St. 505, 76 N.E.2d 370, at syllabus.

{¶26} The state argues that because this court held in *Robertson I* that there was sufficient evidence to convict Robertson of the Willis shooting based on Maupin's testimony alone, there was not a strong probability that the outcome of Robertson's trial would be different if Willis were to testify. This argument is unpersuasive. When determining whether there is sufficient evidence to support a conviction, we view the evidence in a light most favorable to the state. *See State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). It is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Here, we are tasked with reviewing whether the trial court abused its discretion in determining the probable effect of newly discovered evidence on a new trial. Given our record and our highly deferential standard of review, we are left with little choice but to uphold the trial court's ruling.

{¶27} At the time of Robertson's trial, Maupin had been facing criminal charges. Maupin testified against Robertson in exchange for a potential plea deal

8

that could reduce his prison term from 26 years to two years, a 94 percent reduction. Gray, who had been housed with Maupin in the Hamilton County Justice Center, testified at trial that Maupin had admitted that he was going to lie at Robertson's trial in the hopes of reducing his sentence. Finally, witness Twanda Alexander claimed that she had been with Maupin at the time of Willis's shooting, and that she and Maupin had not been at the scene of the crime.

{¶28} On retrial, the finder-of-fact would be faced with two different versions of the events surrounding Willis's shooting. Only one version implicated Robertson in the shooting. We cannot determine if Maupin, Willis, or either would be believed, as neither witness appears to be particularly credible. However, given the obvious concerns with Maupin's credibility, a trial court could reasonably find that there is a strong probability that a judge or jury would discount Maupin's testimony altogether. Without Maupin's identification of Robertson as the shooter, the state would not be able to tie Robertson to that crime.

{¶29} Based on the trial court's determination that Willis testified truthfully, we hold that the court did not act in an unreasonable, arbitrary, or unconscionable manner in granting Robertson a new trial on the Willis shooting charges. The state's first assignment of error is overruled.

### The New Evidence and the Hayes Shooting and Cox Murder

{¶30} In its second assignment of error, the state contends that the trial court abused its discretion when it ordered a new trial on the charges stemming from the Hayes shooting and the Cox murder. The state is correct.

{¶31} Willis's testimony related only to his own shooting. However, the trial court granted Robertson a new trial on all charges due to Willis's allegations of

misconduct by Detective Upchurch, combined with what the trial court saw as Detective Upchurch's involvement in the Hayes and Cox investigations.

{¶32} We focus our analysis on the first prong of the *Petro* test, i.e., whether "the new evidence discloses a strong probability that it will change the result if a new trial is granted." *Petro*, 148 Ohio St. 505, 76 N.E.2d 370, at syllabus.

{¶33} It is true that Detective Upchurch testified that she was involved in helping Officer Johnson link the nickname "Detroit" with Robertson. Surprisingly, the trial court chose to believe Willis's testimony concerning the photographic lineup, as well as Willis's insinuations that Detective Upchurch had intentionally failed to subpoena him at an address where he could be reached. Even taking Willis's testimony as true, the trial court's determination that there was a strong probability that this evidence would change the outcome of a retrial on the Hayes shooting and Cox murder charges is not supported by a sound reasoning process.

{¶34} The evidence tying Robertson to the Hayes shooting was overwhelming, and Detective Upchurch's involvement in that case was limited to her helping Officer Johnson determine the real name of "Detroit." Even if Detective Upchurch had somehow come across this information in a nefarious manner, Hayes's identification of Robertson was based on his prolonged personal observation. Hayes had spent a significant amount of time with Robertson the first time he had given Robertson a ride. A few days after the first ride, Hayes picked up Robertson again. Hayes recognized Robertson from the last time that he had given him a ride. Hayes knew that Robertson's nickname was "Detroit." Hayes was able to identify Robertson from a photographic lineup. Three of Robertson's fingerprints were found in Hayes's van. Willis's testimony does not impact this evidence.

{¶35} The state's evidence at trial regarding the Cox murder was also compelling. Detective Ballman investigated the Cox murder. Witnesses told him that a person nicknamed "Detroit" had shot Cox. Wilson saw the shooting from the street. Julian was sitting beside Cox when Cox was shot. Maupin claimed that he was also at the scene. At trial, all three eye witnesses—Julian, Tange, and Maupin—testified that Robertson shot Cox. At trial, Detective Upchurch testified that investigators of this crime had helped her to determine who Robertson was, and not vice versa.

{¶36} Given this record, we hold that the trial court's decision granting Robertson a new trial on the Hayes shooting and Cox murder charges was unsound. *See AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990) (holding that a decision is unreasonable if there is no sound reasoning process that would support it). The evidence tying Robertson to the Hayes shooting and the Cox murder was overwhelming. Willis's testimony did not undermine the state's case on the charges arising out of these events, let alone create a "strong probability" of a different result on retrial.

{¶37} The state's second assignment of error is sustained.

## Conclusion

{¶38} While a different trier-of-fact may have determined that Willis was not credible, given our highly deferential standard of review, the trial court's judgment granting Robertson a new trial on the Willis shooting charges is affirmed.

{¶39} In all other respects, the trial court's judgment is reversed. There was no rational basis for the trial court to hold that Willis's testimony would in any way effect the outcome of a retrial on the Hayes shooting and the Cox murder charges.

Judgment affirmed in part, reversed in part, and cause remanded.

**MYERS, J.,** concurs.
**ZAYAS, P.J.,** concurs in judgment only.

Please note:

> The court has recorded its own entry on the date of the release of this opinion.

