[Cite as *State v. MacDonald*, 2019-Ohio-3595.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180310 |
| | | TRIAL NO.   B-1703187 |
| Plaintiff-Appellee, | | |
| | : | |
| vs. | | *O P I N I O N.* |
| | : | |
| BRENDAN MACDONALD, | : | |
| Defendant-Appellant. | | |
| | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  September 6, 2019

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Alex Scott Havlin,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michaela M. Stagnaro*, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1}   Defendant-appellant Brendan MacDonald fired a gun into his neighbor's yard, and then engaged in a shootout with the responding police officers outside of his home.  He now appeals his convictions and sentences for attempted murder and felonious assault.

{¶2}   MacDonald raises three assignments of error: (1) the evidence was insufficient as a matter of law to convict him of attempted murder and felonious assault, or the convictions were against the manifest weight of the evidence, (2) the trial court erred by overruling his motion for new trial, and (3) his sentences were contrary to law.

{¶3}   Since the trial court failed to make one of the findings required for imposing consecutive sentences, MacDonald's third assignment of error is sustained as to the consecutive nature of his sentences, and his case is remanded for a new sentencing hearing on that issue alone.  In all other respects, the judgment of the trial court is affirmed.

### *Factual Background*

{¶4}   Charles Gutknecht, a neighbor of MacDonald, was sitting in his garage on May 28, 2017, when he heard a "raucous" on the street.  He walked down his driveway to see what was happening and he saw MacDonald in the street, holding a handgun.  MacDonald told Gutknecht that "he was hunting demons," and that "he was going to kill some demons."  Then MacDonald fired a shot, not at Gutknecht, but about six feet away into his yard.  MacDonald then turned towards Gutknecht, pointed the gun directly at him, and told him that he was a demon and that he was going to kill him.  As Gutknecht backed away up his driveway, MacDonald lowered

the gun and walked back toward his house. Gutknecht went inside and called the police.

{¶5} Multiple police officers and sheriff's deputies arrived at MacDonald's house at about the same time. Deputy Nicholas Price and Officer Scott Celender parked on the east side of MacDonald's house. Deputy James Whitacre and Officers Joseph Smith, Russell Schuckmann, and Jeremy Richmond took up positions to the west of the house. The incident was captured by the body cams and dash cams of Officers Celender, Richmond, and Schuckmann.

{¶6} MacDonald was sitting on his front porch. As Price approached, he could hear MacDonald talking somewhat incoherently, saying things like "Satan, you're the devil." As Price was trying to talk to him, MacDonald stood up, picked up a handgun, and walked into the house. Price was standing on the street, about 15-20 yards from the house. MacDonald reentered the doorway, pointed the gun at Price, and started shooting. Price ducked and returned fire. MacDonald went back into his house as Price took cover behind his cruiser. MacDonald then came back out of the house and shot at Price again. Price and Richmond returned fire and MacDonald retreated into the house again.

{¶7} Celender was on the east side of the garage when he heard Price yell at MacDonald to drop the gun, and then he heard shots. Celender went to his cruiser to get his rifle. While behind his cruiser, he saw MacDonald in the doorway with the gun at his side, so Celender started talking to MacDonald, trying to figure out what he was upset about, and telling him to put the gun down. Celender testified that MacDonald said, "I'm gonna kill you cops, I'm gonna kill all of you." On the videos

from Celender's dash and body cams, MacDonald can also be heard saying "get off my property" and "I know what you are."

{¶8} MacDonald raised his gun in Celender's direction before lowering it and turning towards Whitacre, Richmond, Smith, and Schuckmann. MacDonald peered around the door before sticking his arm out the door and firing at Whitacre, Richmond, Smith, and Schuckmann. Price and Richmond returned fire. MacDonald went back in the house, shut the door, and did not emerge again until hours later, at which time he was apprehended by SWAT.

{¶9} Price did not know how close the bullets came to hitting him or the other officers, just that shots were fired directly at him. Smith, Whitacre, and Richmond all testified that they believed MacDonald was firing at them. Schuckmann testified that he heard a bullet "whiz by." MacDonald never fired at Celender. Officer John Mulholland processed the crime scene. He only recovered one bullet fragment fired by MacDonald. It was in the door of one of the cruisers.

{¶10} MacDonald was the only defense witness. He testified that "everyone looked like a demon to me," including Gutknecht and the officers. He said he fired a shot into Gutknecht's yard to "back him off, keep him away from me," and that he was not trying to injure Gutknecht. MacDonald testified that he did not remember shooting at the officers, but that he had seen the videos from the incident. He said he was not trying to kill anyone, and that he was just trying to get the officers to leave him alone because they all looked like demons.

### *Insufficient Evidence/ Manifest Weight of the Evidence*

{¶11} In his first assignment of error, MacDonald argues that the evidence presented at trial was insufficient to sustain the convictions, and that the convictions were against the manifest weight of the evidence.

{¶12} The test for determining if there was sufficient evidence to sustain a conviction is whether,

> after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt.

*State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). It is a question of law for the court to determine, the court is not to weigh the evidence. *Id.*

{¶13} To prove an attempt, the state must prove that the offender purposely did or omitted to do something which is "a substantial step in a course of conduct planned to culminate in the commission of the crime." *State v. Group,* 98 Ohio St.3d 248, 2002-Ohio-7247, 781 N.E.2d 980, ¶ 95. To count as a substantial step, the conduct must be "strongly corroborative of the actor's criminal purpose." *Id.*

{¶14} To convict MacDonald of attempted murder, the state had to prove that MacDonald purposely or knowingly engaged in conduct which, if successful, would have purposely caused the death of another, or caused the death of another as a proximate result of his committing or attempting to commit an offense of violence that is a first- or second-degree felony, besides voluntary or involuntary manslaughter. R.C. 2923.02(A) and 2903.02.

{¶15} MacDonald claims that he did not purposely or knowingly attempt to kill the officers. He argues that he merely wanted the police to leave him alone. This is belied by the witness testimony and the videos.

{¶16} On three separate occasions he fired at police despite multiple warnings and commands by police. All of the officers, except Celender, testified that MacDonald pointed the gun at them and fired at them. Their testimonies were consistent and backed up by dash and body camera footage. Celender also testified that MacDonald told him, "I'm gonna kill you cops, I'm gonna kill all of you."

{¶17} Furthermore, in an attempted-murder prosecution, a defendant's specific intent to kill another can be inferred from the defendant's shooting in the victim's direction. *State v. Hendrix,* 1st Dist. Hamilton Nos. C-160194 and C-150200, 2016-Ohio-2697, ¶ 44. Thus, even without Celender's testimony, the jury was permitted to infer from MacDonald's actions in shooting at the officers that he acted purposely.

{¶18} The act of shooting at the officers was strongly corroborative of MacDonald's criminal purpose—to kill the officers—and was a substantial step towards his commission of the offense of murder.

{¶19} To convict MacDonald of felonious assault, the state had to prove that he knowingly caused or attempted to cause physical harm to the victims by means of a deadly weapon. R.C. 2903.11(A).

{¶20} Pointing a firearm, coupled with additional evidence indicating an intention to use the firearm, is sufficient to establish felonious assault. *State v. Alexander*, 1st Dist. Hamilton Nos. C-100593 and C-100594, 2011-Ohio-4911, ¶ 5; *see State v. Green,* 58 Ohio St.3d 239, 239, 569 N.E.2d 1038 (1991). In *Alexander*,

when the defendant was approached by police officers he concealed something in his waistband and fled. *Alexander* at ¶ 6. When an officer cornered him in a building, Alexander turned and pointed a gun at the officer. *Id.* The officer fired first, hitting Alexander before he could fire at the officer. *Id.* This court held that there was sufficient evidence to convict Alexander of felonious assault for attempting to cause physical harm to the officer by means of a deadly weapon. *Id.* at ¶ 14.

{¶21} MacDonald was convicted of the felonious assaults of Charles Gutknecht and Officer Celender. In Gutknecht's instance, MacDonald fired a shot a few feet away from Gutknecht, and then pointed his firearm at Gutknecht and threatened to kill him. Although MacDonald never fired a shot near Celender, MacDonald threatened to kill him and the other officers, and then pointed the gun at Celender, all after already firing multiple shots at Price. In both instances, MacDonald pointed the firearm at the victims and indicated an intention to use it.

{¶22} MacDonald was found guilty of all accompanying firearm specifications. For each of his five attempted-murder convictions, MacDonald was found guilty under R.C. 2941.1412(A), and sentenced according to R.C. 2929.14(B)(1)(f)(i) for discharging a firearm at a peace officer while committing attempted murder. As discussed above, the state presented sufficient evidence that MacDonald shot at the officers while attempting to kill them.

{¶23} For each of his two convictions for felonious assault, MacDonald was found guilty under R.C. 2941.145(A), and sentenced according to R.C. 2929.14(B)(1)(a)(ii) for having on or about his person, or under his control, a firearm, indicating that he possessed the firearm, or using it to facilitate the offense of felonious assault. As discussed above, the state presented sufficient evidence that

MacDonald indicated that he possessed the firearm by pointing it at Gutknecht and Celender.

{¶24} Once we have determined there was sufficient evidence presented to sustain the convictions, we consider MacDonald's claim that the convictions were against the manifest weight of the evidence. In doing so, we review the record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned." *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Reversal and grant of a new trial should only be done in "exceptional cases in which the evidence weighs heavily against the conviction." *Id.*

{¶25} MacDonald testified that he was not trying to hurt the officers, and was only firing at them because he thought they were demons and wanted them to go away. But, he also testified that he did not actually remember the incident, and only knew of the events from watching the videos later.

{¶26} The state presented substantial evidence of MacDonald's guilt. MacDonald's lack of accuracy, that most of the officers could not tell how close the shots were to actually hitting them and that police only recovered one bullet fragment, and MacDonald's contradictory testimony do not indicate that the convictions were against the manifest weight of the evidence. The testimony and video footage provide ample evidence that MacDonald was firing at the officers, and that he threatened and pointed his gun at Gutknecht and Celender.

{¶27} The jury was free to weigh MacDonald's testimony with that of the officers and Gutknecht, and they did not lose their way in believing the officers and

Gutknecht, and convicting MacDonald. MacDonald's convictions were not against the manifest weight of the evidence.

*Competency*

{¶28} In his second assignment of error, MacDonald argues that because he was incompetent during trial, the trial court erred when it overruled his motion for a new trial. In the alternative, he argues that Dr. Dreyer's March 6 report finding him incompetent to be sentenced presented sufficient good cause that the court should have at least held an evidentiary hearing on his motion for a new trial.

{¶29} Issues regarding MacDonald's competency were raised before and after trial. The court ordered psychiatrist Dr. Carla Dreyer of the Court Clinic to determine whether MacDonald was competent to stand trial and whether he met the criteria for a plea of not guilty by reason of insanity. She issued two reports in July 2017, recommending that MacDonald be found competent to stand trial, and that he did not meet the criteria for a plea of not guilty by reason of insanity. The court found MacDonald competent to stand trial, but referred him back to the Court Clinic for a second opinion as to whether he met the criteria for a plea of not guilty by reason of insanity. In September 2017, Dr. Emily Davis issued a report determining that MacDonald did not meet the criteria for a plea of not guilty by reason of insanity. MacDonald initially pled not guilty and not guilty by reason of insanity, but did not present a defense of not guilty by reason of insanity at trial. Rather, he argued that he lacked the requisite mens rea.

{¶30} On February 21, 2018, after the jury's verdict, the court ordered Dr. Dreyer to conduct an "advisability of treatment evaluation" of MacDonald. Dr. Dreyer conducted the evaluation and informed the court that MacDonald was

presenting symptoms of severe depression, auditory hallucinations, and psychosis. On February 27, 2018, the court ordered an emergency clinic to be conducted to determine MacDonald's competency to be sentenced.

{¶31} On March 6, Dr. Dreyer issued a report recommending that MacDonald be found incompetent to be sentenced. On March 7, both parties agreed to a 20-day stay at Summit Behavioral Health, where MacDonald was further evaluated.

{¶32} Also on March 7, defense attorney Ed Keller filed a Crim.R. 33 motion for a new trial, arguing that in light of Dr. Dreyer's March 6 report, MacDonald had not been competent to stand trial. Keller then withdrew as counsel in case he would have to testify at a future hearing as to MacDonald's competency during trial. MacDonald was appointed new counsel.

{¶33} We review a trial court's decision on a motion for a new trial for an abuse of discretion, and will not reverse unless the trial court's decision was "unreasonable, arbitrary, or unconscionable." *State v. Robertson*, 1st Dist. Hamilton No. C-160681, 2017-Ohio-7225, ¶ 19, *appeal not allowed*, 152 Ohio St.3d 1420, 2018-Ohio-923, 93 N.E.3d 1003.

{¶34} Under Crim.R. 33(A), a defendant will be granted a new trial if he shows that his substantial rights were materially affected by an "irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial."

{¶35} The issue of competence may be raised after a trial has commenced, even after the guilt phase of the trial is complete. *State v. Berry*, 72 Ohio St.3d 354, 360, 650 N.E.2d 433 (1995); R.C. 2945.37(B). When the issue is raised after trial

has commenced, the court will only hold a competency hearing upon good cause shown. *Id.* "Good cause shown" has been construed as requiring objective indications of incompetence—such as the defendant's conduct, specific references by defense counsel of irrational behavior by the defendant, or medical reports. *State v. Chapin*, 67 Ohio St.2d 437, 441-42, 424 N.E.2d 317 (1981).

{¶36} Regarding the test for competency, R.C. 2945.37(G) presumes that a defendant is competent to stand trial. It is only if, after a hearing,

the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial.

{¶37} On April 11, 2018, the trial court held a hearing during which it considered two competency reports prepared on MacDonald. The first was the report dated March 6, 2018, prepared by Dr. Dreyer, in which she recommended that MacDonald be found incompetent to be sentenced. The second was a report dated April 10, 2018, prepared by Dr. April Sutton of Summit Behavioral Health, in which she recommended that MacDonald be found competent to be sentenced. Both parties stipulated that the doctors would testify in accordance with their reports. The court said it had read both reports, and based on its observations of MacDonald during his six-day trial, it found the report prepared by Dr. Sutton to more accurately reflect MacDonald's competency. The court found MacDonald competent for sentencing.

{¶38} The court also addressed MacDonald's motion for a new trial at the April 11 hearing. MacDonald's defense counsel told the court that he was prepared to argue the motion. Defense counsel said, in relation to the issue of MacDonald's competency during trial,

I would say that we could also, perhaps, make the assumption that Mr. Keller didn't raise the issue because he didn't believe it was an issue during the trial. However, we do not have his direct testimony, and I think that's the only thing that the trial court is missing today that could be relevant, that could be heard in an evidentiary hearing. We'll leave it up to the court to determine whether or not that's something that we should – we should hear at a future date in an evidentiary hearing.

{¶39} The state argued that the court had all of the evidence that it needed, and that Keller could have raised competency as an issue at trial if he thought it was a problem, and so it was not necessary to hear his testimony.

{¶40} The court decided it was not necessary to hear Keller's testimony on MacDonald's competence, and denied the motion for new trial. The court based its decision on MacDonald having been found competent before trial, the court's ability to observe MacDonald during the trial (including his "cogent" testimony), the court's experience handling the mental-health docket since 2011, its perception that MacDonald had communicated effectively with Keller during trial, and the fact that Keller did not raise any competency concerns during trial.

{¶41} Dr. Dreyer's March 6 report satisfied the good-cause requirement such that the court was required to hold an evidentiary hearing. That is exactly what the court did on April 11. It merely didn't have Keller's testimony to consider, a piece of

evidence which defense counsel decided to proceed without, and which all parties acknowledged was likely of minimal value since Keller did not raise competency as a concern at trial.

{¶42} The trial court held an evidentiary hearing on the motion for a new trial as required. Its decision to overrule MacDonald's motion for new trial was not unreasonable, arbitrary, or unconscionable, and thus was not an abuse of discretion.

### *Sentencing*

{¶43} In his third assignment of error, MacDonald claims that the trial court erred as a matter of law when it improperly sentenced him. He argues that the trial court failed to give the required notifications for DNA testing, to properly consider the purposes and principles of sentencing, and to make the findings required for imposing consecutive sentences.

{¶44} The court sentenced MacDonald to eight years on each attempted-murder conviction and seven years on each accompanying gun specification. For the felonious-assault convictions, the court imposed sentences of five years each, with three-year gun specifications to run consecutive to each. Multiple of the 13 sentences were ordered to run consecutive to each other, for an aggregate sentence of 53 years.

{¶45} It is undisputed that the trial court failed to inform MacDonald of the requirement to submit to DNA testing as required by R.C. 2901.07(B)(1). Nevertheless, R.C. 2901.07(B)(1) does not confer substantive rights on the defendant, and failure to give such notifications is harmless error. *State v. Taylor,* 1st Dist. Hamilton No. C-150488, 2016-Ohio-4548, ¶ 6.

{¶46} The trial court is required to consider the purposes and principles of sentencing under R.C. 2929.11, and the factors under R.C. 2929.12, but it need not make specific findings. *State v. Cephas*, 1st Dist. Hamilton No. C-190105, 2019-Ohio-52, ¶ 42, *appeal not allowed*, 155 Ohio St.3d 1423, 2019-Ohio-1421, 120 N.E.3d 868. We can presume from a silent record that the trial court considered the appropriate factors unless the defendant affirmatively shows that the court failed to do so. *Id.* Where the defendant's sentences are within the statutory ranges, it is his burden to demonstrate that the court did not consider the appropriate factors. *Id.*; *see State v. Bedell*, 2018-Ohio-721, 107 N.E.3d 160, ¶ 29 (1st Dist.).

{¶47} An appellate court can only modify or vacate a felony sentence if it finds by clear and convincing evidence that the sentence is contrary to law, or that the record does not support the sentencing court's mandatory findings. *State v. White*, 2013-Ohio-4225, 997 N.E.2d 629, ¶ 11 (1st Dist.); *see* R.C. 2953.08(G)(2).

{¶48} According to R.C. 2929.11(A), the overriding purposes of felony sentencing are to "protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes."

{¶49} R.C. 2929.12(B), (C), (D), and (E) delineate the seriousness and recidivism factors the court considers in crafting a sentence that complies with R.C. 2929.11.

{¶50} MacDonald argues that the trial court failed to consider the mitigating factors under R.C. 2929.12(C)(3) and (4), and factors under R.C. 2929.12(E)(3) and (4) which indicated that recidivism was less likely. MacDonald's sentences are

14

within the statutory ranges, so it is his burden to show that the court did not consider the appropriate factors.

{¶51} R.C. 2929.12(C)(3) states that the offender did not cause or expect to cause physical harm to any person or property in committing the offense. The record and the jury's finding of guilt for attempted murder and felonious assault belie MacDonald's assertions regarding this factor.

{¶52} Under R.C. 2929.12(C)(4), MacDonald argues that, although not enough to constitute a defense, his mental-health issues serve as substantial grounds to mitigate his conduct, and that the trial court erred when it failed to consider his mental-health concerns in mitigation.

{¶53} The defense attorney argued at the sentencing hearing that MacDonald's sentence should be mitigated due to his mental illness, and the trial court acknowledged her awareness of his mental-health issues. The judge was also present throughout the pretrial and posttrial proceedings where MacDonald's competency was at issue. As discussed above, the judge found him competent to stand trial and competent to be sentenced after reviewing multiple medical reports. She was keenly aware of his mental-health issues. MacDonald has not shown by clear and convincing evidence that the court failed to consider his mental-health issues in crafting his sentence.

{¶54} Under R.C. 2929.12(E)(3) and (4), MacDonald argues that recidivism is less likely because he was a law-abiding citizen for a significant number of years, and the circumstances which led to the offense are not likely to recur.

{¶55} It is undisputed that MacDonald's prior criminal record is very light, and is limited to minor traffic and misdemeanor offenses. MacDonald presented

evidence of his lack of a prior record at the hearing. There is no indication in the record that the court failed to consider MacDonald's lack of a prior criminal record. MacDonald also argued at the hearing that if he had been on his medication that day, the incident never would have happened. But, MacDonald did not provide the court with any assurance that he would not go off his medication again in the future. Regardless, there is no indication in the record that the court did not consider the R.C. 2929.12(E)(4) factor.

{¶56} MacDonald has failed to prove by clear and convincing evidence that the trial court failed to consider the principles and purposes of sentencing in rendering his sentence.

{¶57} A trial court imposing consecutive sentences must make the findings required by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. No "talismanic incantation" is given to the words of R.C. 2929.14(C)(4). *Id.* As long as the reviewing court can discern that the trial court engaged in the correct analysis and the record contains evidence to support the findings, consecutive sentences should be upheld. *Id.* at ¶ 29.

{¶58} At the sentencing hearing, the trial court made two out of the three mandatory consecutive sentence findings pursuant to R.C. 2929.14(C)(4). The court said that "consecutive sentence[s are] necessary to protect the public and [are] not disproportionate to the seriousness of the offender's conduct and the danger he poses to the public." The court was then required to make a finding under subsection (a), (b), or (c), but failed to do so.

{¶59} In its sentencing entry, the trial court did include all of the R.C. 2929.14(C)(4) findings, including subsection (b).

{¶60} The court appeared to attempt to make the R.C. 2929.14(C)(4)(b) finding at the hearing when it said, "And also I find that the harm caused by these 13 offenses committed adequately reflects the seriousness of the conduct of the sentence on this."

{¶61} The actual language of R.C. 2929.14(C)(4)(b) is,

at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶62} In *State v. C.G.,* 10th Dist. Franklin No. 14AP-1005, 2015-Ohio-3254, ¶ 44, 46, the 10th District held that the third finding was met by subsection (b) from the trial judge's statements that he would have sentenced the defendant to more years in prison if he had the option, and "I feel that the factors of a continuous course of conduct were met here pursuant to Section b."

{¶63} There are multiple other cases in which an appellate court was able to discern a finding under subsection (b) even though the trial court did not use the exact language of the statute. *See, e.g., State v. Tucker,* 9th Dist. Lorain Nos. 16CA010963 and 16CA010964, 2017-Ohio-4215, ¶ 14 (the trial court used a shortened version of the statutory text—"[a] single prison term would not adequately reflect the seriousness of defendant's conduct."); *State v. Blanton,* 4th Dist. Adams

No. 16CA1031, 2018-Ohio-1275, ¶ 100 (the trial court noted the great harm caused by defendant and similarly used a shortened version of text when it said that it was unaware of "any sentence that would adequately reflect the seriousness of this conduct.").

{¶64} Pursuant to *Bonnell* and its progeny, the trial court need not recite the exact words of R.C. 2929.14(C)(4) in order to impose consecutive sentences. But, the statement by the court in MacDonald's case is a far cry from the actual language of R.C. 2929.14(C)(4)(b), and from cases which utilized shortened versions of the statutory text.

{¶65} Where the trial court fails to make a required finding at a sentencing hearing for consecutive sentences under R.C. 2929.14(C)(4), the error cannot be cured nunc pro tunc, and the proper remedy is remand for a new hearing. *State v. Beasley,* 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 260.

{¶66} Since the trial court failed to make one of the required consecutive sentencing findings during the sentencing hearing, MacDonald's third assignment of error is sustained as to the consecutive nature of his sentences, and his case is remanded for a new sentencing hearing on that issue alone. The third assignment of error is overruled in all other respects.

### *Conclusion*

{¶67} There was sufficient evidence to sustain MacDonald's convictions, and his convictions were not against the manifest weight of the evidence, so his first assignment of error is overruled. The trial court held an evidentiary hearing on MacDonald's motion for a new trial, and did not abuse its discretion in denying his motion, so MacDonald's second assignment of error is overruled. Since the trial

court failed to make one of the required consecutive sentencing findings during the sentencing hearing, MacDonald's third assignment of error is sustained as to the consecutive nature of his sentences, and his case is remanded for a new sentencing hearing on that issue alone. His sentences and the trial court's judgment are affirmed in all other respects.

Judgment affirmed in part, reversed in part, and cause remanded.

BERGERON, J., concurs.
MOCK, P.J., concurs in part and dissents in part.

MOCK, P.J., concurring in part and dissenting in part.

{¶68} While I agree with the majority opinion on most matters, I do not agree that the imposition of consecutive sentences must be reversed because the appropriate findings were not made.

{¶69} "R.C. 2929.14(C)(4) requires the trial court to make statutory findings prior to imposing consecutive sentences, and Crim.R. 32(A)(4) therefore directs the court to state those findings at the time of imposing sentence." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 26. That statutory provision provides that the trial court must first find that the defendant's service of consecutive sentences is necessary either to protect the public from future crime or to punish the offender. *Id.* The trial court must then find that consecutive sentences are not disproportionate either to the defendant's conduct or to the danger he poses to the public. *Id.* Finally, the trial court must find one of the subsections applicable:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18

19

of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶70} The majority found, and I agree, that the trial court clearly made the first two findings, and that those findings are supported by the record. But I do not agree that the trial court failed to make the required third finding.

{¶71} In the transcript of the sentencing hearing, the trial court is recorded as having stated the following: "And I also find that the harm caused by these 13 offenses committed adequately reflects the seriousness of the conduct of the sentence on this." It appears that the trial court was attempting to read R.C. 2929.14(C)(4)(b), but lost its place in the middle. Comparing the language recited by the trial court to the language of the statute, we see:

> At least two of the multiple offenses were committed as part of one or more courses of conduct, and **the harm caused by [these 13 offenses]** so **committed** was so great or unusual that no single

prison term for any of the offenses committed as part of any of the courses of conduct **adequately reflects the seriousness of the** offender's **conduct**.

The trial court did, however, recite the appropriate finding language from R.C. 2929.14(C)(4)(b) in its entry.

{¶72} The majority properly notes that the trial court is not required to recite the language verbatim, citing a number of cases where appellate courts were able to determine the provision referred to from the language used during the sentencing hearing. But the majority then went on to conclude that "the statement by the court in MacDonald's case is a far cry from the actual language of R.C. 2929.14(C)(4)(b), and from the cases which utilized shortened versions of the statutory text." I disagree.

{¶73} In a case from the Eighth Appellate District, the trial court had imposed consecutive sentences after stating that, among other things, "I feel that the factors of a continuous course of conduct were met here pursuant to Section B." *State v. C.G.*, 10th Dist. Franklin No. 14AP-1005, 2015-Ohio-3254, ¶ 44. The trial court also made statements that "this is one of the worst ones I've seen under these scenarios" and "if I could give you more, I would." The court found that it could

discern from the trial court's statements regarding the seriousness of appellant's conduct and its statement indicating appellant's conduct warranted more than the ten-year sentence maximum allowed, that the court believed the harm caused by the multiple offenses here was so great or unusual for a gross sexual imposition charge that no single prison term would be adequate.

*Id.* at ¶ 46.

{¶74}   Likewise, the Ninth Appellate District has addressed the issue.  In one case, the trial court had shortened the language of R.C. 2929.14(C)(4)(b) into a finding that "[a] single prison term would not adequately reflect the seriousness of defendant's conduct."  *State v. Tucker*, 9th Dist. Lorain No. 16CA010963, 2017-Ohio-4215, ¶ 14.  This was enough to allow the court to "discern from the court's language that it engaged in the analysis required under Section 2929.14(C)(4)(b)."  *Id.*  In another case, the trial court stated that "given the harm caused and a single term is not adequately reflecting the seriousness of the offense, given your history, these consecutive terms are necessary to protect the public."  *State v. Kilmire*, 9th Dist. Summit No. 27319, 2015-Ohio-665, ¶ 17.  The court similarly concluded that "[w]hile the trial court may not have used the precise language of the statute at all times, it is clear from the record that the trial court undertook the appropriate analysis and made the requisite findings."  *Id.*

{¶75}   Similarly, the Fourth Appellate District addressed the issue.  *State v. Blanton*, 4th Dist. Adams No. 16CA1031, 2018-Ohio-1275.  In that case, the trial court imposed consecutive sentences, making the statement on the record that it was unaware of "any sentence that would adequately reflect the seriousness of the conduct."  *Id.* at ¶ 100.  The trial court had noted the seriousness of the charges and found that the conduct was "heinous."  The court then concluded that "[f]rom the trial court's statements at the sentencing hearing and the language used in the sentencing entry, it is clear that the trial court complied with the dictates of R.C. 2929.14(C)(4)."  *Id.* at ¶ 101.

{¶76}   This case is distinguishable from our recent decision in *State v. Jackson*, 1st Dist. Hamilton No. C-180245, 2019-Ohio-3299.  In that case, the court reviewed the cases outlined above and found the trial court's recitation lacking.

Unlike in *C.G.*, the trial judge in Jackson's case did not reference subsection (b) of R.C. 2929.14(C)(4), nor did he say that he would impose more time if able to. Unlike in *Tucker* and *Blanton*, the judge did not use a shortened form of the language of subsection (b). In fact, there is nothing in the trial court's statements during the sentencing hearing which tracks or paraphrases the language of subsection (b).

*Id.* at ¶ 42.

{¶77}   In this case, while the trial court did not reference the subsection by name as in *C.G.*, it did use a shortened form of subsection (b) as in *Tucker, Kilmire*, and *Blanton*.  Unlike in *Jackson*, we *can*

discern from the record that the trial court properly considered the proportionality of the sentence, or that it made a finding under subsection (b) that the offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses was so great or unusual that a single prison term for any of the offenses would be inadequate.

*Id.* at 43.

{¶78}   During the sentencing hearing, the trial court discussed how incredibly serious MacDonald's conduct was.

23

Firing a gun at law enforcement is about the most dangerous thing anyone can do. We just can't have it. It's just a flat miracle, as I said before, that no one, no one, was either injured or killed.

Also, they clearly put his neighbor through aiming a gun at him and shooting a gun into his yard, it's frightening and it's just too dangerous.

And also I find that the harm caused by these 13 offenses committed adequately reflects the seriousness of the conduct of the sentence on this.

The trial court clearly meant to recite the language of R.C. 2929.14(C)(4)(b), but misread it. That recitation was coupled with the trial court's discussion of the extreme gravity of engaging law enforcement in a gun battle and a reference to the provision in the sentencing entry. The Ohio Supreme Court has directed that "as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 695, at syllabus. I would conclude that the statements of the trial court, coupled with the verbatim recitation of the statutory provision in the sentencing entry, are sufficient to demonstrate that the trial court complied with the dictates of R.C. 2929.14(C)(4). Thus, I would affirm the decision of the trial court in this respect as well.

Please note:
The court has recorded its own entry on the date of the release of this opinion.