[Cite as *State v. Harrison*, 2023-Ohio-1458.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220233<br>TRIAL NO. C-21CRB-19877 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| SHAWN HARRISON, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 3, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond L. Katz,* for Defendant-Appellant.

**Bock, Judge.**

**{¶1}** Defendant-appellant Shawn Harrison appeals his conviction for violating a protection order under R.C. 2919.27. We affirm the trial court's judgment.

## I. Facts and Procedure

**{¶2}** Y.G. filed for a temporary protection order against Harrison under R.C. 2903.214. The order became effective in June 2021. Several months later, police arrested Harrison for violating the protection order, asserting that he contacted Y.G. via Instagram.

**{¶3}** At the bench trial, the parties stipulated that the protection order had been served properly. Defense counsel stated, "Judge, we are acknowledging a number of things, although it's not a formal stipulation," and acknowledged that Harrison sent the Instagram messages, but he thought that he was communicating with someone other than Y.G.

**{¶4}** Y.G. testified that she obtained the protection order after several instances of Harrison stalking her. She testified that in November 2021, she received a message containing a video entitled "Why Can't I Have You" in her Instagram account named "The Iron Maiden_13" from an account bearing Harrison's name. She took a screen shot of the message and called the police. Y.G. testified to another message that she received in her Instagram account from Harrison's account named "The Invisible Man," and that Harrison "mentioned" her in his story but deleted it. Y.G. also testified that Harrison uses an application on his cellular phone that allows him to contact her from different phone numbers.

**{¶5}** City of Harrison police officer Byron Wilber testified that he responded to Y.G.'s home. Wilber confirmed the temporary protection order and reviewed the

Instagram messages, which were sent from "Lone Wolf" and "Invisible Man 13." Wilber testified that there were "a bunch of" deleted messages and postings, including the one containing the video "Why Can't I Have You," where Harrison tagged Y.G. Wilber then went to Harrison's home to interview him.

{¶6} Wilber testified that Harrison initially denied sending the Instagram message, but then said that he thought he was sending the messages to his current girlfriend. Harrison allowed Wilber to view the contents of his phone. Wilber saw the profiles that matched the profiles where the messages to Y.G. originated. Wilber arrested Harrison for violating a protection order. Wilber testified that Harrison stated that he "might have sent it a long time ago and it just now finally went through."

{¶7} Harrison testified that the Instagram profile "Lone Wolf" belonged to him, along with "other accounts," and that the stories in "defense exhibit 2" came from him. Harrison asserted that the messages from "Lone Wolf" were sent to "Jovial Artist" and another woman, not Y.G.

{¶8} On cross-examination, Harrison conceded that Y.G. had used "The Iron Maiden_13," but asserted, "That's her old account." Harrison testified that he only had interacted with Y.G.'s "primary account," "Maiden of the North," and not "Iron Maiden_13." He said that "the other ones she set to private" and he was not on her friends lists with those. Harrison contended that he thought that she had accidentally been tagged, but later "found out she was being fraudulent and on a fake account with the girl's name that's in my neighborhood." Harrison accused Y.G. of creating the Instagram account to appear to be Harrison's new girlfriend, claiming that Y.G. had "catfished" him.

{¶9} Harrison conceded that "The Invisible Man" and "The Lone Wolf" are his Instagram accounts, and the messages sent to "The Iron Maiden_13" came from him. But he asserted that the messages were from when they were dating. He reiterated that the messages sent on the dates in question were sent to someone other than Y.G.

{¶10} The court found Harrison guilty of violating a protection order. It noted Wilber's testimony that Harrison initially had denied sending the messages, but changed his story to asserting that the messages may have been delayed, and delivered after the protection order became effective. The court pointed to Wilber's viewing Harrison's phone and finding the contacts made on Instagram from Harrison to Y.G. The court found Wilber's testimony to be credible and Harrison to be "all over the place." The court found that Harrison's accusations that Y.G. had created a fake account to "lure him" into communicating with her incredible.

{¶11} The court sentenced Harrison to a 180-day jail term with one day credit, suspending the remaining 179 days. It imposed one year of nonreporting probation with an electronic monitoring unit for six months, plus costs and fees. It ordered that Harrison have no contact with Y.G. It also issued a temporary protection order and a juris monitor around Y.G.'s home and her job.

## II. Law and Analysis

{¶12} Harrison asserts in two assignments of error that the evidence was insufficient to support his conviction and that he was denied the effective assistance of counsel.

### A. There was sufficient evidence to support Harrison's conviction

{¶13} Harrison's first assignment of error argues that, because the state failed

4

to adduce any "state of mind" evidence, there was insufficient evidence to support his conviction.

{¶14} To determine whether a conviction is supported by sufficient evidence, appellate courts view the evidence and reasonable inferences in a light most favorable to the state and determine whether "any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *State v. MacDonald*, 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, ¶ 12, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). Sufficiency of the evidence is a legal question for the court to determine and we do not weigh the evidence unless, after viewing the evidence, it weighs heavily against conviction. *Id.* at ¶ 12.

{¶15} The state charged Harrison with violating a protection order under R.C. 2919.27(A)(2), which provides: "[n]o person shall recklessly violate the terms of * * * [a] protection order * * *." To prove recklessness, the state had to show that Harrison contacted Y.G. with "heedless indifference to consequences" or that he disregarded "a substantial and unjustifiable risk that" he was violating the protection order.

{¶16} Harrison argues that the state failed to show that he acted recklessly. The parties stipulated that the protection order was in place and that Harrison sent the messages. Thus, the only question was whether Harrison recklessly sent the messages to Y.G.

{¶17} Harrison knew that "Iron Maiden_13" was Y.G.'s Instagram account. That she also used a different account is irrelevant. And Harrison's story changed. First, he denied to Wilber any knowledge about the messages. Harrison then claimed that the messages were meant for his current girlfriend, but he sent them to Y.G. by mistake. Then he asserted that he must have sent the messages before the protection

order was in place and that the delivery was delayed. Finally, Harrison claimed that Y.G. "catfished" him to lure him into violating the protection order.

{¶18} Viewed in the light most favorable to the state, reasonable minds could conclude that Harrison recklessly tagged Y.G. or sent the messages to Y.G. with heedless indifference to the consequences. The evidence is sufficient to show that Harrison acted recklessly when he contacted Y.G. via Instagram. We overrule Harrison's first assignment of error.

### B. Harrison received the effective assistance of counsel

{¶19} Harrison's second assignment of error asserts that his trial counsel was ineffective for failing to provide evidence impeaching Y.G.

{¶20} In any ineffectiveness case, a particular decision by counsel must be directly assessed for reasonableness, applying a heavy measure of deference to counsel's judgments. *Strickland v. Washington*, 466 U.S. 668, 691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland* as interpreted by Ohio courts, attorneys are presumed competent. Reviewing courts must refrain from second-guessing strategic, tactical decisions and strongly presume that counsel's performance falls within a wide range of reasonable legal assistance. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

{¶21} To succeed on an ineffective-assistance-of-counsel claim, an appellant must show that (1) counsel's performance was deficient, and (2) the deficient performance deprived the appellant of a fair trial. *Strickland* at 687. "A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other." *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

{¶22} "To warrant reversal, '(t)he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 694.

{¶23} Harrison asserts that his counsel was ineffective by failing to "even hint at any motive for bias that the complaining witness had against" him. Harrison believes that his counsel should have questioned him about his assertion that Y.G. "catfished" him by creating a fraudulent Instagram account bearing the name of one of Harrison's female friends, which he asserts Y.G. did to "lure him into making transmissions to her unwittingly."

{¶24} Harrison has failed to overcome the presumption that his counsel's performance was reasonable. Counsel's decision to avoid making accusations about Y.G. "catfishing" Harrison was reasonable. Harrison knew that the account to which he sent the message had belonged to Y.G. when they were dating. And because his story changed multiple times, counsel may have decided against that line of questioning to stem the damage to Harrison's credibility.

{¶25} Harrison also complains that his counsel failed to search court records for the criminal case in which Y.G.'s boyfriend allegedly assaulted Harrison. He asserts this would show that Y.G. only petitioned for a protection order in retaliation for Harrison testifying in that case. But even if Harrison were correct and Y.G. only sought the protection order for revenge, the basis for the protection order was not at issue in this case. Harrison stipulated that the protection order was in place. The only question was whether he violated it.

**{¶26}** Harrison's trial counsel was not deficient. We overrule his second assignment of error.

### III.    Conclusion

**{¶27}** Harrison's conviction was supported by sufficient evidence and was not against the manifest weight of the evidence. And Harrison received the effective assistance of counsel. We affirm the trial court's judgment.

Judgment affirmed.

**ZAYAS, P.J.,** and **KINSLEY, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.