[Cite as *State v. Kiser*, 2011-Ohio-5551.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellee                       :                    C.A. CASE NO.    24419

v.                                               :                    T.C. NO.    10CR1258

LISA M. KISER                                    :                    (Criminal appeal from
                                             Common Pleas Court)

    Defendant-Appellant                      :

                                                 :

. . . . . . . . . .

**O P I N I O N**

Rendered on the    28th    day of    October   , 2011.

. . . . . . . . . .

KIRSTEN A. BRANDT, Atty. Reg. No. 0070162, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

MARCY A. VONDERWELL-HULL, Atty. Reg. No. 0078311, P. O. Box 20173, Dayton, Ohio 45420
        Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}  Defendant-appellant Lisa M. Kiser appeals her conviction and sentence for one count of theft (credit card), in violation of 2913.02(A)(1), a felony of the fifth degree, and one count of forgery/uttering, in violation of R.C. 2913.31(A)(3), also a felony of the

fifth degree. Kiser filed a timely notice of appeal on January 4, 2011.

I

{¶ 2} The incident which forms the basis for the instant appeal occurred on March 20, 2010, when two women, Holly Sorrell and Candace Hargrove, visited Kiser's residence. Upon arriving, Sorrell and Hargrove put their purses in Kiser's bedroom for safekeeping. Sorrell and Hargrove subsequently spent the night at Kiser's residence. When she awoke, Hargrove realized that her driver's license and bank card had been stolen from her purse. Sorrell found that her bank card had been taken from her purse, as well. Hargrove and Sorrell contacted their respective banks to report that their cards had been stolen and were both informed that unauthorized purchases had been made using the cards.

{¶ 3} While Hargrove and Sorrell were sleeping, Kiser apparently took the women's bank cards from their purses and left her residence. Kiser and her co-defendant, Tanis M. Spragg, then drove to a Kroger grocery store, wherein Kiser made purchases on Hargrove's bank card. Spragg made purchases on Sorrell's bank card totaling $19.02. Kiser and Spragg proceeded to Wal-Mart where they made purchases on Sorrell's bank card totaling $87.62.

{¶ 4} Based on evidence collected from both stores where the stolen cards were used, as well as the interviews of the parties involved, Kiser was indicted on May 21, 2010. In Count I, Kiser was charged with theft, in violation of R.C. 2913.02(A)(1), a felony of the fifth degree; Count II, receiving stolen property, in violation of R.C. 2913.51(A), also a felony of the fifth degree; Count III, misuse of credit cards, in violation of R.C. 2913.21(B)(2), a misdemeanor of the first degree; and both Counts IV and V,

forgery/uttering, in violation of R.C. 2913.31(A), felonies of the fifth degree. At her arraignment on May 25, 2010, Kiser stood mute, and the trial court entered pleas of not guilty on her behalf to the charged offenses.

{¶ 5} Following negotiations with the State, Kiser pled no contest to one count of theft and one count of forgery/uttering, and the remaining counts were dismissed. Kiser also agreed to pay restitution on all of the counts, even those that had been dismissed. We note that Sorrell had been reimbursed by PNC Bank for the amount charged to her stolen card. Thereafter, in anticipation of Kiser's sentencing hearing, PNC Bank submitted a "victim impact statement" which represented its economic loss at $106.64, the amount unlawfully charged to Sorrell's card.

{¶ 6} At the hearing on December 20, 2010, the trial court sentenced Kiser to ten days in jail and five years of community control, ordered her to pay court costs of $50.00, ordered her to pay restitution to PNC Bank in the amount of $106.64, and ordered her to pay $130.00 towards her attorney's fees. The trial court also ordered Kiser to obtain verifiable employment, or if she was unable to work, to provide medical documentation establishing that fact.

{¶ 7} Kiser's trial counsel objected to the court's order to pay restitution to PNC Bank, arguing that the bank was a third party and that there was no actual loss to Sorrell, the identified victim in the indictment, because she had been reimbursed by PNC Bank. The trial court overruled her objection, noting that PNC Bank provided a victim impact statement which was attached to the PSI indicating the amount of its loss.

{¶ 8} It is from this judgment that Kiser now appeals.

II

**{¶ 9}** Kiser's first assignment of error is as follows:

**{¶ 10}** "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ORDERED THE DEFENDANT-APPELLANT TO PAY RESTITUTION TO A THIRD-PARTY."

**{¶ 11}** In her first assignment, Kiser contends that the trial court abused its discretion when it ordered her to pay restitution of $106.64 to PNC Bank. Specifically, Kiser argues that under R.C. 2929.18(A)(1), PNC Bank is not a "victim" as defined by statute, but rather a third-party who is not entitled to restitution.

**{¶ 12}** A trial court, when "imposing a sentence upon an offender for a felony" may impose financial sanctions, including "[r]estitution * * * in an amount based on the victim's economic loss." R.C. 2929.18(A)(1). "The statute sets forth four possible payees to whom the court may order restitution to be paid: the victim or survivor of the victim, the adult probation department that serves the county on behalf of the victim, the clerk of courts, and 'another agency designated by the court,' such as the crime victims' reparations fund. (Citations omitted)." *State v. Wilson*, Montgomery App. No. 23167, 2010-Ohio-109, ¶ 20. "The fourth category of payee, *another agency designated by the court*, at a minimum consists of entities that 'paid the victim for the economic loss caused by the crime.' * * * (i.e., crime victims' reparations fund.)" *State v. Brinson*, Montgomery App. No. 22925, 2009-Ohio-5040, ¶ 8, quoting *State v. Bartholomew*, 119 Ohio St. 3d 359, 2008-Ohio-4080, ¶ 12. An economic loss is "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense and includes any loss of income * * * [and] any property loss. * * * ." R.C. 2929.01(L). "Therefore, trial courts have not abused

their discretion if restitution is ordered to another agency that paid for any loss of income, [or] property loss suffered by the victim." *Brinson*, supra.

{¶ 13} R.C. 2930.01(H)(1) defines a victim as a "person who is identified as the victim of a crime * * * in a police report or in a complaint, indictment, or information that charges the commission of a crime and provides the basis for the criminal prosecution * * * and subsequent proceedings to which this chapter makes reference." R.C. 2743.51 defines a victim as "a person who suffers personal injury or death as a result of * * * [c]riminally injurious conduct." Black's Law Dictionary defines "victim" in part as the "person who is the object of a crime or tort, as the victim of a robbery is the person robbed." (6th Ed. 1990), 1567.

{¶ 14} We have held that a trial court abuses its discretion when it orders restitution that does not bear a reasonable relationship to the actual financial loss suffered. *State v. Williams* (1986), 34 Ohio App.3d 33. Therefore, we generally review a trial court's order of restitution under an abuse of discretion standard. See, *e.g.*, *State v. Naylor,* Montgomery App. No. 24098, 2011-Ohio-960, ¶22. However, when a trial court is asked to determine to whom restitution can be awarded pursuant to R.C. 2929.18(A)(1), we review the decision of the court utilizing a de novo standard of review.

{¶ 15} The State asserts that when an insurer is the victim of a crime, a court's order of restitution to the insurer is not an abuse of discretion. *State v. Hinson*, Cuyahoga App. No. 87132, 2006-Ohio-3831. In *Hinson*, the defendant was convicted of insurance fraud and falsification. On that basis, the trial court ordered the defendant to pay restitution to the insurance company that processed and paid on her fraudulent claim. Id. On appeal, the

court held that restitution was proper because "the insurer was not merely a third party seeking reimbursement for its payment on Hinson's behalf, but it was also a victim of the insurance fraud." Id. The State argues that the same reasoning should apply in the instant case.

{¶ 16} Initially, we note that we recently held that an insurance company is not a proper third-party payee under R.C. 2929.18(A)(1). *State v. Colon*, 185 Ohio App.3d 671, 675, 2010-Ohio-492. Additionally, this is not a case, as in *Hinson*, where the defendant filed a fraudulent insurance claim with an insurance company and received a payout. Rather, Kiser stole the credit cards belonging to Hargrove and Sorrell and used those cards to make illegal purchases. The victims in the instant case are Hargrove and Sorrell. While it is undisputed that PNC reimbursed Sorrell for the amount that was unlawfully charged to her credit card, PNC was not identified in the indictment as the victim of Kiser's crimes. Moreover, PNC was not the object of Kiser's offenses. Simply put, the victims of the thefts are the people named in the indictment whose money Kiser stole. Accordingly, PNC is a third-party who is not statutorily entitled to recover the costs of its decision to reimburse Sorrell for the loss she suffered as a result of Kiser's crimes. Although an agreement was struck with the State to make restitution, that agreement did not encompass PNC Bank.

{¶ 17} Upon review, we conclude that PNC Bank is not a "victim" for the purposes of R.C. 2929.18(A)(1), and the trial court erred as a matter of law when it awarded restitution in the amount of $106.64 to PNC. The order of restitution to PNC is, therefore, reversed and vacated.

{¶ 18} Kiser's first assignment of error is sustained.

III

{¶ 19} Kiser's second and final assignment of error is as follows:

{¶ 20} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ORDERED THAT THE DEFENDANT-APPELLANT PAY $130 TOWARDS THE COST OF HER COURT-APPOINTED PUBLIC DEFENDER."

{¶ 21} In her final assignment, Kiser argues that the trial court erred when it ordered her to pay $130.00 towards the cost of her appointed counsel because it did not first determine whether she had a present and future ability to pay for her representation.

{¶ 22} Initially, we note that Kiser did not object to the court's imposition of attorney's fees at the sentencing hearing. Thus, Kiser has failed to preserve the issue for appeal. Nevertheless, we conclude that the record affirmatively establishes that the trial court considered Kiser's present and future ability to pay the costs of her representation.

{¶ 23} Specifically, the trial court stated as follows:

{¶ 24} "Trial Court: *** With regard to the next item, let me indicate that Ms. Kiser – the Court has looked at her physical and mental health. She previously has had a number of health issues. However, she's not under the care of a doctor at this time and does not take prescription medication at this time.

{¶ 25} "*The Court finds Ms. Kiser has a present and a future ability to pay with respect to restitution.* The Court orders restitution in the amount of $106.64 to PNC Bank with a payment schedule of $10.00 per month. Court orders Ms. Kiser to pay attorney fees of $130.00. ***" (Emphasis added).

{¶ 26} It is clear from the record that the trial court considered Kiser's present and

future ability to pay a portion of her attorney's fees before ordering her to do so. The trial court had the opportunity to review Kiser's Pre-Sentence Investigation report prior to the sentencing hearing. Based on the contents of the report, the trial court made a discretionary determination that Kiser was able to contribute to her appointed counsel's fees which were generated in her defense.

{¶ 27} Kiser's second assignment of error is overruled.

IV

{¶ 28} Kiser's first assignment having been sustained, the order of restitution to PNC is reversed and vacated. In all other respects the judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, J., concurs.

FAIN, J., concurring:

{¶ 29} I write separately merely to note that, in my opinion, the result of this appeal might have been different if it had been clearly established in the record that PNC Bank, rather than reimbursing Sorrell for an economic loss, had never charged her account for the amount of the unauthorized credit card charge, or had credited her account back that amount before Sorrell sustained any out-of-pocket loss. If the record had clearly established that PNC Bank was the victim, in that it paid Kroger and Wal-Mart some specified amounts of money, pursuant to the unauthorized credit card transactions, without having charged Sorrell's account, or with having credited her account back before Sorrell incurred any out-of-pocket loss, then I would hold that PNC Bank could be the payee of a restitution

award.

{¶ 30} But as I understand it, the record, including the PSI report, indicates that Sorrell, not PNC Bank, was the victim, and that PNC Bank reimbursed Sorrell.

. . . . . . . . . .

Copies mailed to:

Kirsten A. Brandt
Marcy A. Vonderwell-Hull
Hon. Timothy N. O'Connell