[Cite as *State v. Guthrie*, 2020-Ohio-501.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180661 |
| | | TRIAL NO.  18CRB-25280A |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| JILL GUTHRIE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  February 14, 2020

*Paula Boggs Muething*, City Solicitor, *William T. Horsely*, Interim City Prosecutor, and *Scott Crowley,* Assistant City Prosecutor, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} In an apparent road-rage incident with Beverley Renadette, defendant-appellant Jill Guthrie was charged with criminal damaging and menacing. After a bench trial, Guthrie was acquitted of the menacing charge, but was convicted of criminal damaging and was ordered to pay restitution.

{¶2} In two assignments of error, Guthrie argues that the trial court abused its discretion in ordering restitution without conducting a hearing on the amount of restitution under R.C. 2929.08(A)(1), and that her conviction for criminal damaging was based on insufficient evidence and against the manifest weight of the evidence. We overrule Guthrie's assignments of error and affirm the judgment of the trial court.

### *Factual Background*

{¶3} Renadette testified that she was attempting to merge onto Columbia Parkway when Guthrie sped around her and attempted to get in front of her, nearly causing a collision. Renadette claimed that Guthrie then got out of her car, approached Renadette's car, and started beating on her driver's side window. Renadette testified that Guthrie "slammed" Renadette's driver's side mirror, causing the plastic covering around the mirror to break. Guthrie got back into her car and drove away. Renadette testified that her mirror had a crack in the plastic covering prior to her encounter with Guthrie, but that Guthrie's actions caused the previously cracked plastic covering to break apart.

{¶4} Officer Pete Faillace testified that Renadette came to the police station to file a report a few days after the incident. He examined her car briefly and noted

the damage to the mirror, although he could not remember what the damage looked like.

{¶5} Guthrie testified that Renadette was sitting in the middle of the road not paying attention, and so she tried to go around Renadette. Guthrie testified that Renadette "rammed" Guthrie's car twice before slamming into the back of it. Guthrie testified that she got out of her car in order to get Renadette's insurance information. She denied having any physical contact with Renadette's car. Guthrie drove away and filed a report with her insurance company, but not the police. At trial, Guthrie produced photos of the alleged damage to her vehicle, which consisted of a "little bump."

### Sufficiency of the Evidence/ Manifest Weight of the Evidence

{¶6} For ease of discussion, we analyze Guthrie's assignments of error out of order. In Guthrie's second assignment of error, she argues that her conviction for criminal damaging was based upon insufficient evidence and against the manifest weight of the evidence.

{¶7} The test for determining if the evidence was sufficient to sustain a conviction is whether "after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *State v. MacDonald,* 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, ¶ 12, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). It is a question of law for the court to determine, the court is not to weigh the evidence. *MacDonald* at ¶ 12.

{¶8} To convict Guthrie of criminal damaging, the state was required to prove that Guthrie knowingly caused, or created, a substantial risk of physical harm to Renadette's property without Renadette's consent. *See* R.C. 2909.06(A)(1).

{¶9} Guthrie argues that the state failed to prove beyond a reasonable doubt that she acted knowingly. A person acts knowingly when the person "is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶10} Guthrie contends that Renadette's testimony shows that Guthrie pushed Renadette's driver's side mirror inward in accordance with normal use, i.e., side mirrors are designed to fold inward. She argues that she could not have known that pushing the mirror inward would probably cause the plastic covering to break apart.

{¶11} However, we must look at the evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution. Although Renadette testified that Guthrie "pushed [the mirror] into the car," she also testified that Guthrie "slammed in the [mirror]," which can be inferred to not be in accordance with normal use. The state also presented photographic evidence of the damaged mirror. *See State v. Lowe*, 1st Dist. Hamilton Nos. C-170494, C-170495, C-170498 and C-170505, 2018-Ohio-3916, ¶ 15 (despite defendant's testimony that he did not act knowingly, the court held that his criminal-damaging conviction was based upon sufficient evidence where the state offered the testimony of the victim and produced photographic evidence of damage).

{**¶12**}  Once we determine that there was sufficient evidence presented to sustain the conviction, we consider Guthrie's manifest-weight-of-the-evidence claim. In doing so, "we review the record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned.' "  *MacDonald,* 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, at ¶ 24, quoting *Martin* 20 Ohio App.3d at 175, 485 N.E.2d 717. Reversal of a conviction and a grant of a new trial should only be done in "exceptional cases in which the evidence weighs heavily against the conviction." *MacDonald* at ¶ 24.

{**¶13**}  Guthrie testified that she did not make contact with Renadette's car, and that in fact Renadette "rammed" into the back of her car.  The trial court was presented with photographs of the damage to both cars, Officer Faillace's testimony, and the conflicting testimonies of Renadette and Guthrie.  As discussed above, there was sufficient evidence for the trial court to find Guthrie guilty beyond a reasonable doubt.  The evidence presented by Guthrie does not make this one of those exceptional cases in which the evidence weighs heavily against the conviction.  The trial court did not err in believing Renadatte's version of events and finding that Guthrie knowingly damaged Renadette's mirror.  Guthrie's second assignment of error is overruled.

### *Restitution*

{**¶14**}  In her first assignment of error, Guthrie argues that the trial court abused its discretion by ordering her to pay restitution without conducting a hearing under R.C. 2929.08(A)(1) to determine the amount of restitution to be paid.

{¶15} An appellate court reviews a trial court's award of restitution in a misdemeanor case for an abuse of discretion. *State v. Adams*, 1st Dist. Hamilton No. C-180337, 2019-Ohio-3597, ¶ 14.

{¶16} R.C. 2929.28(A)(1) requires that the amount of restitution "not exceed the amount of economic loss suffered by the victim," and that an evidentiary hearing must be conducted by the trial court when the amount of restitution is in dispute.

{¶17} The state requested $327.55 in restitution for the damage done to Renadette's side mirror, based on an estimate obtained by Renadette. The reflective glass itself was not damaged, but the plastic casing around it was broken. The estimate obtained by Renadette would put the plastic around the mirror in "new condition."

{¶18} During the sentencing hearing, Guthrie's attorney argued against restitution, stating "if the Court is inclined to impose restitution, that again that restitution be through the appropriate methods of insurance because both of the parties involved do have insurance." Later, Guthrie's attorney stated,

> there's a dispute here with regard to any damage. I don't think that, although she has an insurance adjustment or estimate made, I think the appropriate method for the restitution as in the statute is that if there is a dispute, it should be handled through their insurance company and not be ordered that cash be handed to Miss Renadette because she had an estimate done.

The trial court acknowledged that the "damage was disputed," but then ordered Guthrie to pay $327.55 in restitution.

**{¶19}** On appeal, Guthrie argues that $327.55 does not represent the actual economic loss caused by her actions because the cost covers replacing the mirror and the plastic, and the mirror itself was not actually damaged. Therefore, Guthrie argues that she was entitled to present evidence to reflect the cost of the harm she actually caused. However, Guthrie did not make this argument to the trial court.

**{¶20}** In *State v. Andrews*, 1st Dist. Hamilton No. C-110735, 2012-Ohio-4664, ¶ 26, this court held that where the defendant did not expressly object to the *amount* of restitution ordered, the trial court was not required to hold an evidentiary hearing. (Emphasis added.) The defendant in *Andrews* merely objected to the imposition of restitution because it was not part of the plea deal he agreed to. *Id.* at ¶ 15. Similarly, the state argues that Guthrie only objected to the fact that restitution was ordered, not the amount of restitution ordered, and therefore, the amount was not actually in dispute so as to trigger a hearing.

**{¶21}** Guthrie cites to *State v. Norman*, 8th Dist. Cuyahoga No. 104936, 2017-Ohio-752, ¶ 14, for the proposition that any dispute as to damage is sufficient to put the amount of restitution in dispute. In *Norman,* the record was devoid of any evidence to support the court's award of $1,500 in restitution. *Id.* at ¶ 15. The defendant objected, stating "we are disputing any restitution at this time without any actual proof of what was paid out of pocket for any kind of repairs." *Id.* at ¶ 14.

**{¶22}** The present case is distinguishable from *Norman*, and is akin to *Andrews.* In the present case, there was evidence in the record, in the form of the repair estimate obtained by Renadette, supporting the amount of restitution ordered. Guthrie's objections concerned the fact that both parties had insurance. She argued that Renadette should have recovered from the insurance company, not through

restitution. Although Guthrie argued that there was a question as to "any damage," she did not object to the amount of damage. Similarly, the court acknowledged that the "damage was disputed," but then found that there was damage. Guthrie failed to object to the amount of restitution, and so the court was not required to hold an evidentiary hearing.

{¶23} Guthrie also argues that the amount of restitution ordered was improper because $327.55 includes the cost to replace the mirror and the plastic cover, and that she only damaged the plastic cover.

> A trial court has discretion to order restitution in an appropriate case and may base the amount it orders on a recommendation of the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, but the amount ordered cannot be greater than the amount of economic loss suffered as a direct and proximate result of the commission of the offense.

*State v. Lalain*, 136 Ohio St.3d 248, 2013-Ohio-3093, 994 N.E.2d 423, paragraph one of the syllabus; R.C. 2929.28(A)(1).

{¶24} The trial court found that Guthrie broke Renadette's side mirror by smashing it and causing the plastic to break apart. That Guthrie did not break each individual piece of the mirror (i.e., the reflective glass itself) does not mean that she should not be held responsible for paying to replace the mirror as a whole. The trial court based its award on the estimate submitted by Renadette. There is no evidence that a sufficient repair could have been accomplished for less than $327.55. The

court's order that Guthrie pay restitution in the amount of $327.55 was not arbitrary or unreasonable, and thus was not an abuse of discretion.

### *Conclusion*

**{¶25}** Guthrie's assignments of error are overruled and the judgment of the trial court is affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.